# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WALLACE R. SMITH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 08 C 816 |
| | ) | |
| PAUL HARVEY, M.D., et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Wallace R. Smith sued eleven county and federal officials in their individual capacities under 42 U.S.C. § 1983 based on allegedly sub-par medical care he received while incarcerated at the Metropolitan Correctional Center in Chicago and the Kankakee County Jail, Jerome Combs Detention Center. Federal defendants Kim Widup, Eric Wilson, James Henry, and Candra Symonds have moved to dismiss Mr. Smith's second amended complaint pursuant to Rule 12(b)(6), contending that he cannot sue federal officials under § 1983 and that, in any event, he has failed to allege that they were personally involved in the alleged constitutional violations. For the following reasons, the motion to dismiss is granted.

## I.      Background

The following facts are taken from the second amended complaint and are deemed true for the purposes of the motion to dismiss. Mr. Smith was in the custody of the United States Marshals Service beginning on April 16, 2007, when he was held at the Kankakee County Jail, Jerome Combs Detention Center ("JCDC"). On September 6, 2007, he was transferred to the Metropolitan Correction Center ("MCC"), where he remained until his release on April 23, 2008.

While he was incarcerated, Mr. Smith suffered from a variety of medical conditions and physical disabilities, including coronary artery disease, hypertension, gastroesophogeal reflux

disease, pancreatitis, osteoarthritis, spinal stenosis, type II diabetes, Barrett Disease, left

shoulder impingement and torn rotator cuff, panic attacks, major depression, basal cell

melanoma, and degenerative disc disease.

On October 26, 2007, while at the MCC, Mr. Smith began complaining of chest pains

and shortness of breath.  From that point until January 11, 2008, Mr. Smith filed at least twenty

inmate requests to staff requesting urgent medical attention.  In these requests, he explained that

he had a history of heart related problems and stated that he had previously undergone an

angioplasty to treat similar symptoms.  According to Mr. Smith, defendants Paul Harvey (the

MCC's Clinical Director) and Debi Lamping (the MCC's Health Services Administrator)

questioned the seriousness of Mr. Smith's requests for treatment, and Ms. Lamping told Mr.

Smith, "I don't care about you, you are a con."  On another occasion, Mr. Smith contends that

Mr. Harvey and Ms. Lamping told Mr. Smith to "stop faking."

Two months later, on January 11, 2008, unspecified MCC employees sent Mr. Smith to

Thorek Hospital for an examination.  He was diagnosed with severely clogged arteries and

remained in the hospital until January 18, 2008, when he was transferred to Swedish Covenant

Hospital in Chicago and underwent angioplasty surgery.

After his surgery, Mr. Smith returned to the MCC.  On at least eight occasions following

his surgery, he asserts that he told staff that he was vomiting blood but did not receive medical

services or an examination.  Staff also allegedly failed to provide Mr. Smith with his prescription

medications, which caused him to suffer from severe stomach pain and lose the ability to eat.

He thus was unable to take insulin, which led to muscle cramps, headaches, and anxiety.

On April 23, 2008, Mr. Smith was released from federal custody.  His second amended

complaint is before the court.  He filed suit against the JCDC defendants – Kim Widup (the

United States Marshal for the Northern District of Illinois at the time of the events alleged in the complaint), Michael Downey (the Chief of Corrections for the JCDC), Clyde Dayhoff (the Medical Director at the JCDC), Jean Richmond, née Flageole (the head of nursing at the JCDC), Sue Lecuyer (a nurse at the JCDC), and Kristy Patterson (a physician's assistant at the JCDC). He also sued the MCC defendants – Paul Harvey (the Clinical Director of the MCC's medical department), Eric Wilson (the MCC's Warden), Assistant Warden Henry, and Lt. Commander Lamping (the supervisor of the MCC's medical department). Candra Symonds (the Assistant Director of the Prisoner Operations Division for the Marshals Service) is also named as a defendant.

Mr. Smith seeks relief under § 1983 against the JCDC defendants, the MCC defendants, Marshal Widup (Counts I, II, and III respectively), alleging that the lack of care constitutes deliberate indifference to his serious medical needs. He also contends that Ms. Symonds is liable under § 1983 for the denial of medical care due to systemic deficiencies in staffing and procedures at the MCC (Count IV). The federal defendants seek dismissal of all of the claims against them.

## II.    Discussion

### A.    Standard on 12(b)(6) Motion to Dismiss

A plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" and "fair notice" of the plaintiff's claims and the basis for those claims. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). According to the Seventh Circuit, this language imposes two hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776

(7th Cir. 2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  Second, the factual

allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility

above a 'speculative level'; if they do not, the plaintiff pleads itself out of court."  *Id.*; *Ashcroft v.*

*Iqbal*, 129 S.Ct. 1937, 1949 (2009) (to survive a motion to dismiss, a complaint's request for

relief must be facially plausible).

However, "[a] complaint need not allege all, or any, of the facts logically entailed by the

claim, and it certainly need not include evidence."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081

(7th Cir. 2008).  Instead, a complaint contains enough details if it includes allegations that show

that "it is plausible, rather than merely speculative, that he is entitled to relief."  *Id.* at 1083

(internal quotations and citations omitted); *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (the alleged facts

must  "allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged" so "naked assertions devoid of further factual enhancement" are

insufficient).  Meanwhile, the court is neither bound by the plaintiff's legal characterization of

the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's

claims.  *See Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992).

### B.    The Federal Defendants' Motion to Dismiss

The federal defendants contend that the § 1983 claims fail as a matter of law because that

section does not cover claims of wrongful conduct by federal employees in the course of their

employment.  Next, they assert that because Mr. Smith is represented by counsel, the court

should not view his claims through the lens provided by *Bivens v. Six Unknown Named Agents*,

403 U.S. 388 (1971).  Alternatively, they contend that any *Bivens* claims fail because they do not

sufficiently allege that the individual defendants were personally involved in the alleged

constitutional deprivations.

### 1. § 1983 vs. *Bivens*

It is well established that § 1983 only applies to actions taken under color of state law and thus cannot support a claim based on conduct by federal employees in the course of their employment. *See, e.g., District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973). Thus, all of Mr. Smith's requests for § 1983 relief directed at the federal defendants are stricken with prejudice.

Mr. Smith nevertheless notes that as a general rule, specifying an incorrect legal theory in a complaint is not fatal. *See Bartholet v. Reishaure A. G.*, 953 F.2d 1073, 1078 (7th Cir. 1992); *see also La Porte County Republican Central Comm. v. Board of Comm'r*, 43 F.3d 1126, 1129 (7th Cir. 1994) (plaintiffs need not plead legal theories). The parties agree that Mr. Smith's claims against the federal defendants should have have been based on the Supreme Court's decision in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The court thus turns to whether Mr. Smith may rely on *Bivens* instead of § 1983.

Substitution of legal theories is permissible unless the adjustment to the original theory surprises the defendant and makes it more costly or difficult for him to defend or the change causes unreasonable delay. *Vidimos*, *Inc. v. Laser Lab, Ltd*., 99 F.3d 217, 222 (7th Cir. 1996). Here, the two legal theories are similar. *See King v. Fed Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005) (*Bivens* authorized the "filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers"). Moreover, while this is a 2008 case, Mr. Smith's current counsel was appointed on February 25, 2009, and allowing the case to proceed against the federal defendants based on *Bivens* will not unreasonably delay the proceedings or make it more difficult for the federal defendants to defend

this action.  Accordingly, the court declines to limit Mr. Smith to seeking relief under § 1983.

### 2.    Mr. Smith's Allegations

The federal defendants contend that even if the court allows Mr. Smith to rely on *Bivens*, the allegations in the second amended complaint are deficient.  Under the Eighth Amendment, prison officials must provide medical care to prisoners.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  "Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs."  *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008), *citing Estelle v. Gamble*, 429 U.S. at 104.

In addition, "to state a cause of action under *Bivens*, the plaintiff must allege facts which show that the individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights."  *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997).  A government actor meets this standard when "she acts or fails to act with a deliberate or reckless disregard of plaintiff's rights or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent."  *Id*. (internal quotations omitted); *Cardona v. Pickett*, No. 07 C 503, 2010 WL 914929, at *3 (S.D. Ill. Mar. 11, 2010) (liability under 42 U.S.C. § 1983 and for purposes of *Bivens* does not attach unless a defendant caused or participated in the deprivation of a constitutional right).

The federal defendants focus on whether Mr. Smith has adequately alleged that each defendant was involved in the constitutional deprivations detailed in the second amended complaint.  First, they contend that allegations about involvement made "upon information and belief" are inherently conclusory.  The court disagrees, as the Supreme Court did not strike this phrase from the lexicon when it made the pleading rules more demanding.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. at 551, 554-55.

Second, Kim Widup (the United States Marshal for the Northern District of Illinois at the time of the events alleged in the complaint), Eric Wilson (the MCC's Warden), James Henry (the MCC's Assistant Warden), and Candra Symonds (the Assistant Director of the Prisoner Operations Division for the Marshal's Service) challenge the sufficiency of the allegations about their personal involvement in the alleged denial of medical care to Mr. Smith.

*Candra Symonds and Kim Widup*

Ms. Symonds is the Assistant Director of Prison Operations for the United States Marshal's Service, and is in charge of defendants in custody and prisoner management, including prison health care standards and medical treatment. She is stationed in Crystal City, Virginia. Kim Widup was the United States Marshal for the Northern District of Illinois at the time of the events alleged in the complaint. In his response to the motion to dismiss, Mr. Smith asserts that Ms. Symonds and Marshal Widup knew about his requests for medical attention because he wrote at least three letters to the Legal Department at the MCC. Mr. Smith then concludes that Ms. Symonds and Marshal Widup were on notice regarding his medical needs.

The current iteration of the complaint does not contain any allegations about the letters, despite the well established rule that a plaintiff may not amend his complaint in response to a motion to dismiss. *See, e.g., Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). In any event, the letters would not save the claims against Ms. Symonds and Marshal Widup because they were written to the MCC's legal department, and no allegations plausibly suggest that Ms. Symonds and Marshal Widup knew about the letters. *See Vance v. Peters*, 97 F.3d 987, 993-94 (7th Cir. 2000) (rejecting argument that "any prisoner communication to a prison official anywhere in the corrections hierarchy constitutes adequate notice to the official of a violation of the Eighth Amendment" and holding that "[t]he plaintiff still has the burden of

demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice" to alert him or her to an unconstitutional deprivation). Accordingly, the claims against these defendants are dismissed.

*Eric Wilson and James Henry*

Eric Wilson and James Henry are the Warden and Assistant Warden at the MCC, respectively. Mr. Smith alleges that they knew about his physical needs and requests for medical attention because he submitted more than twenty "Inmate Requests to Staff" seeking immediate medical attention. In his response to the motion to dismiss, Mr. Smith adds that he sent at least sixteen "Inmate Requests to Staff" to Warden Wilson and at least five "Inmate Requests to Staff" to Assistant Warden Henry.

These allegations are insufficient to state a claim because a senior official's receipt of a complaint about a subordinate, without more, does not make the senior official personally liable. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Specifically, basing liability on the existence of letters sent to a senior official is improper because it is "inconsistent with the personal responsibility requirement for assessing damages against public officials." *Id*. (addressing § 1983 claims); *see also Joyner v. Snyder*, No. 06-3062, 2007 WL 3253390, at *3 (C.D. Ill. Nov. 02, 2007) ("Simply sending a prison director a grievance complaining of the actions or conduct of subordinates does not establish the director's personal involvement").

The allegations directed at Warden Wilson Assistant and Warden Henry are exclusively based on their purported receipt of complaint letters from Mr. Smith. Because letters to officials are insufficient to establish personal liability under *Bivens*, *see supra*, Mr. Smith has failed to allege a colorable claim against these defendants.

**III.    Conclusion**

The federal defendants' motion to dismiss [#80] is granted and the claims against

defendants Kim Widup, Eric Wilson, James Henry, and Candra Symonds are dismissed.  Mr.

Smith is granted leave to file an amended complaint consistent with counsel's Rule 11

obligations.  The granting of leave to amend does not express any view on the merits of

additional arguments the federal defendants may raise if Mr. Smith can properly allege *Bivens*

claims against these defendants.  Any amended complaint must be filed by April 22, 2010.


DATE:   March 29, 2010                                        _Blanche M. Manning_
                                                             Blanche M. Manning
                                                             United States District Judge